5 A.3d 404 (2010)
Carl J. BARRICK and Brenda L. Barrick, Appellants
v.
HOLY SPIRIT HOSPITAL OF THE SISTERS OF CHRISTIAN CHARITY, individually and doing business as Holy Spirit Hospital, Sodexho Management, Inc., Sodexho Operations, LLC, and Linda J. Lawrence, Appellees.
No. 1856 MDA 2009
Superior Court of Pennsylvania.
Argued June 9, 2010.
Filed September 16, 2010.
*406 Wayne F. Shade, Carlisle, for appellants.
Stephanie L. Hersperger, Harrisburg and Aaron Jayman, Camp Hill, for Sodexho Management, Sodexho Operations and Lawrence, appellees.
Daniel E. Cummins, Scranton, in support of Sodexho Management, amicus curiae.
*407 BEFORE: MUSMANNO, LAZARUS and OLSON, JJ.
OPINION BY OLSON, J.:
Appellants, Carl J. Barrick (Mr. Barrick) and Brenda L. Barrick, appeal from the order entered on October 16, 2009, directing the discovery and production of correspondence between counsel for Appellants and Dr. Thomas Green (Dr. Green), Mr. Barrick's treating physician and designated expert witness at trial. Upon careful consideration, we affirm.
The factual and procedural history of this case may be summarized as follows. Appellants filed suit against Appellees after Mr. Barrick was allegedly injured when a chair collapsed underneath him in the cafeteria at the Holy Spirit Hospital. Dr. Green, an orthopedic surgeon at Appalachian Orthopedic Center (Appalachian), began treating Mr. Barrick shortly thereafter. Following the institution of the action, Appellants designated Dr. Green as an expert witness at trial.
During discovery, Appellees served Appalachian with a subpoena for Mr. Barrick's medical file. Appalachian disclosed Mr. Barrick's treatment records. Subsequently, Appellees filed a motion to enforce the subpoena, maintaining that they were denied access to electronic mail and written correspondence between Appellants' counsel and Dr. Green which pertained to Dr. Green's role as Appellants' designated expert in this case. Appellants responded by asserting that any documents between their counsel and Dr. Green were privileged attorney work-product. Following argument and subsequent agreement between the parties, the trial court conducted an in camera review of the correspondence contained in Dr. Green's file to determine whether it was privileged. On October 16, 2009, the trial court entered an order granting Appellees' motion to enforce the subpoena and directing Dr. Green and Appalachian to turn over the requested documents. Appellants' timely appeal followed.[1] By agreement of the parties, the documents at issue were certified to this Court under seal.
Appellants present a single issue for our review:
Is it error for the court below to order [Mr. Barrick's] treating physician, who will also be testifying as his expert witness, to disclose letters and emails between the physician and counsel for [Appellants] that addressed the strategy as to how to frame the physician's expert opinions where all of the treatment records of [Mr. Barrick] have been disclosed to [Appellees]?
Appellants' Brief at 3 (complete capitalization omitted).[2]
Before examining the merits of the claim presented, we must first address Appellees' contention that Appellants waived the right to object to the subpoenas served upon Appalachian. Appellees argue that they served Appellants with notice to serve a subpoena upon Appalachian pursuant to Pa.R.C.P. 4009.21, but Appellants did not object within 20 days as *408 required. Appellees' Brief at 8-10. Appellees then served the subpoena and received Mr. Barrick's medical records from Appalachian. Appellees also assert that they followed up with a notice of a second subpoena to include all correspondence. Appellees maintain that counsel for Appellants again failed to object and actually signed a waiver pursuant to Pa.R.C.P. 4019.21(c). Id. Appellees further assert that Appellants never objected to the subpoena nor filed a motion for a protective order under Pa.R.C.P. 4009.21(d)(2). Id. at 11.
Appellants respond that the issued subpoenas "expressly focused, in bold print, upon [Mr. Barrick's] medical records." Appellants' Reply Brief, at 4. Thus, they "could not have anticipated" that the subpoenas were "intended to embrace the privileged communications between [Appellants'] counsel [ ] and Dr. Green in his capacity as an expert witness [ ]." Id. at 5. Citing our decision in McGovern v. Hospital Service Association, 785 A.2d 1012 (Pa.Super.2001), Appellants argue that they had the right to object to written discovery of privileged communications at any time. Id. at 5-6.
We agree with Appellants. In McGovern, plaintiffs brought suit against two health care organizations for breach of contract and tortious interference after the organizations terminated an agency agreement. Plaintiffs served the organizations with a discovery request for the production of documents. The organizations failed to object to the request within the requisite time period. Later, the organizations invoked the attorney-client privilege and plaintiffs argued that the defendants' objections were waived. The trial court ordered disclosure of the requested documents. On appeal this Court reversed, concluding the trial court was required to first consider: "(1) the nature and severity of the discovery violation; (2) the defaulting party's willfulness or bad faith; (3) prejudice to the opposing party; and (4) the ability to cure the prejudice." McGovern, 785 A.2d at 1019.
McGovern focused on the appropriate remedy for an alleged discovery violation in failing to respond to a document request, while in the present case the issue is whether certain materials are immune from production in response to a subpoena because of their privileged status. Nevertheless, our rationale in McGovern is instructive on the waiver issue presently before us:
Pa.R.C.P. 4003.1 clearly states that subject to the provisions of Rules 4003.2 to 4003.5, "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Pa. R.C.P. 4003.1 (emphasis added). We are unaware of any case law that suggests a trial court may order the discovery of privileged material as a sanction let alone without any balancing. Accordingly, we are extremely reluctant to affirm any order that compels full discovery when the information being sought may be privileged. We therefore find that failure to file objections within the thirty-day time period does not automatically waive the right to object.
Id. at 1018-1019 (emphasis added).
Here, the record belies Appellees' assertion that Appellants never objected to the subpoenas. Appellants, in their answer to Appellees' motion to enforce, "object[ed] to discovery of communications between Appalachian [] and counsel for [Appellants] respecting the role of Appalachian [ ] as an expert witness for [Appellants]." Appellants' Answer to Motion to Enforce Subpoena, ¶ 4. Accordingly, it is clear that Appellants objected when they realized *409 that privileged information was a potential target of Appellees' request. Moreover, this is not an instance where Appellants are raising an objection for the first time on appeal in contravention of Pa.R.A.P. 302. In this case, the issue of privilege was squarely before the trial court and, based upon McGovern, we decline to find waiver.
We now turn to the merits of Appellants' claim. Appellants contend that correspondence between Appellants' counsel and Dr. Green, in his capacity as an expert in this matter, dealt with legal theories, trial strategy, and tactics "as to how the opinions of Dr. Green will be framed for the purposes of negotiation and trial [and] are beyond the scope of permissible discovery." Appellants' Brief at 8. According to Appellants, Appellees were provided with all of Mr. Barrick's medical records, and, therefore, "[a]ll of the facts that bear upon [Dr. Green's] opinions have been disclosed in the treatment records." Id. at 6. Appellants claim that the trial court's decision to compel discovery of the correspondence is beyond "the scope of [Pennsylvania] Rules [of Civil Procedure] 4003.3 and 4003.5" because those rules do not "afford the defense privy to such discussions between counsel and the expert." Id. at 10. Appellants argue that this is so because Dr. Green is Appellants' representative. Id. at 13. The ultimate effect of the trial court's ruling, as suggested by Appellants, "would be that such communications would be discoverable if they were in writing, but not discoverable if they were oral." Id. at 11. Appellants maintain that instead of adopting a bright-line rule requiring the disclosure of pre-trial communications between an expert and counsel, in camera trial court inspection and attendant redaction is a practical solution. Id. at 14-15. Finally, Appellants maintain that should this Court adopt a bright-line rule, such rule should apply prospectively and not to this matter. Id. at 16-17.
Our standard of review is as follows:
Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that we are faced with questions of law, our scope of review is plenary.
Gormley v. Edgar, 995 A.2d 1197, 1202 (Pa.Super.2010) (citation omitted).
As the parties and the trial court acknowledge, the question presented is one of first impression.[3] Thus, a review of the relevant Pennsylvania Rules of Court pertaining to discovery is warranted.
Underpinning all of discovery in civil cases is the notion that the permissible scope of discovery is broad. Pursuant to Pa.R.C.P. 4003.1 "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ...". Pa.R.C.P. 4003.1. The scope of discovery *410 under Rule 4003.1 is "[s]ubject to the provisions of Rules 4003.2 to 4003.5 inclusive[.]" Id.
Rule 4003.3 limits the scope of discovery of an attorney's trial preparation materials as follows:
Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories.
Pa.R.C.P. 4003.3.
Additionally:
The underlying purpose of the work-product doctrine is to shield the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case. The doctrine promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients. However, the work-product privilege is not absolute and items may be deemed discoverable if the product sought becomes a relevant issue in the action.
T.M. v. Elwyn, Inc., 950 A.2d 1050, 1062 (Pa.Super.2008), citing Gocial v. Independence Blue Cross, 827 A.2d 1216 (Pa.Super.2003).
By comparison, Rule 4003.5 permits "[d]iscovery of facts known and opinions held by an expert" that are "acquired or developed in anticipation of litigation or for trial[.]" Pa.R.C.P. 4003.5(a). The Rule requires that the identified expert, through written discovery, "state the subject matter on which [he/she] is expected to testify" as well as "the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion[.]" Pa.R.C.P. 4003.5(a)(1)(a), (b). This may be accomplished by furnishing an expert report. Pa.R.C.P. 4003.5(a)(1)(b).
As this appeal demonstrates, there is conflict between Rules 4003.3 and 4003.5. The former Rule prohibits discovery of the mental impressions of a party's representative,[4] including an attorney, in preparation for litigation; whereas, the latter Rule requires disclosure of the substance of the facts and opinions underlying a testifying expert's conclusions, which ostensibly would include communications with an attorney.[5] In reconciling this conflict, we are compelled to find that if an expert witness is being called to advance a party's case-in-chief, the expert's opinion and testimony may be impacted by correspondence and communications with the *411 party's counsel; therefore, the attorney's work-product doctrine must yield to discovery of those communications.
In this case, the trial court examined two conflicting Common Pleas Court cases in rendering its decision to compel discovery of the correspondence between Dr. Green and Appellants' counsel. "We recognize that decisions of the Court of Common Pleas are not binding precedent; however, they may be considered for their persuasive authority." Hirsch v. EPL Technologies, Inc., 910 A.2d 84, 89 n. 6 (Pa.Super.2006). Thus, we will examine Shambach v. Fike, 82 Pa. D. & C. 4th 535 (Lackawanna County 2006) and Pavlak v. Dyer, 59 Pa. D. & C. 4th 353 (Pike County 2003).
In Shambach, Shambach instituted suit against his employer for alleged injuries caused when Fike struck him with a forklift. Shambach designated his treating physician as an expert for trial. His employer sought to depose the physician. The Shambach court determined that Pa. R.C.P. 4003.5 requires that expert discovery other than written requests, i.e. oral discovery such as a deposition, requires cause shown; whereas, Pa.R.C.P. 4003.6 allows a party to depose a treating physician. Ultimately, the Shambach court concluded:
Having examined the relevant Rules of Civil Procedure, applicable case law and considering the arguments of the parties as well as the production of the expert report written by Dr. Knobler for the plaintiff, we conclude that Dr. Knobler may act as both a treating physician and expert witness for purposes of this case. However, because he has acted in the past as a treating physician, only this information not prepared in anticipation of litigation is discoverable by defendants. Therefore, defendants are free to depose Dr. Knobler but only as to Dr. Knobler's capacity as a treating physician. Conversely, defendants are not authorized to depose Dr. Knobler regarding any professional opinions which have been developed in anticipation of litigation. While there may not be any bright line test to distinguish between these two areas, the date of the formulation of his report can certainly be a helpful guide.
Shambach, 82 Pa. D. & C. 4th at 544.
Pavlak involved a personal injury action following a car accident. Pavlak's treating physician was also designated his expert at trial. Pavlak objected to a subpoena for correspondence between Pavlak's counsel and the expert. More specifically, counsel for Pavlak "conceded at oral argument that the medical records were discoverable because plaintiff's physical condition [was] at issue, [but] objected to the discovery of attorney correspondence sent to his expert on the grounds that such letters constituted attorney work product." Pavlak, 59 Pa. D. & C. 4th at 355. Ultimately, the Pavlak court determined that the defendant was entitled to discovery of written correspondence between plaintiff's counsel and the designated expert. However, the court concluded that the attorney workproduct contained within said documents should be redacted. In the exercise of caution, the trial court further required plaintiff's counsel to submit the original correspondence for in camera review.
Here, the trial court correctly determined that "this case is more akin, if not identical, to the situation faced by the court in Pavlak [...]." Trial Court Opinion, 12/15/2009, at 2. The trial court aptly noted that Shambach dealt with the scope of a deposition of an expert, rather than the disclosure of correspondence. Id. We agree and conclude that the rationale espoused in Pavlak provides some guidance. However, like the trial court, we do not *412 believe redaction and in camera inspection are practical. Instead, we agree with the trial court that a "bright line" rule must be adopted. Hence, we conclude that attorney work-product must yield to the disclosure of the basis of a testifying expert's opinion.
In making this determination, we note that the attorney work-product privilege is not sacrosanct, particularly where it has become relevant to an issue in the pending action. Elwyn, Inc., 950 A.2d at 1062. Appellants' counsel could not reasonably expect his work-product to remain privileged when Appellees are entitled to discover "the substance of the facts and opinions to which the expert is expected to testify" as well as "the grounds for each opinion." Pa.R.C.P. 4003.5(b). The correspondence between Appellants' counsel and Dr. Green is highly relevant to the action at hand. See Elwyn, Inc., 950 A.2d at 1062. To test the weight and veracity of Dr. Green's ultimate conclusions, Appellees are entitled to discover the extent of counsel's influence over Dr. Green's opinions and whether counsel directed Dr. Green to reach certain conclusions or to disregard certain facts or take other facts into consideration. In other words, Appellees are entitled to discover information which would enable them to ascertain whether Dr. Green's opinions are his own or whether he merely intended to parrot what he was told by counsel. As such, we reject the notion that Mr. Barrick's medical records contain all of the information upon which Dr. Green relied. We must assume that communications from counsel were reviewed by Dr. Green in the course of his work as an expert and, therefore, he may have relied on said communications in arriving at his opinion. Appellees cannot properly defend against Dr. Green's conclusions without knowing the entire basis for his opinion.
Moreover, we reject Appellants' assertion that the trial court's finding creates a disparity between: (1) written and oral communications between counsel and an expert, and (2) plaintiffs and defendants. An expert may still be cross-examined during trial about oral communications with counsel and said communications would not be protected. A party is merely prohibited from deposing the expert beforehand, unless permission is granted. Pa.R.C.P. 4003.5; Shambach, supra. Additionally, the rules apply equally to both plaintiffs and defendants.
We also agree with the trial court that in camera review of correspondence between attorney and expert is unnecessary. We have previously determined that a "court may conduct in camera review of documents identified [ ] to be subject to a privilege, to better analyze the privilege issues, as needed." Elwyn, Inc., 950 A.2d at 1063 (emphasis added). However, because we have determined that attorney work-product must give way to discovery of trial preparation materials relied upon by a testifying expert, in camera inspection would be duplicative and a waste of judicial resources.
Finally, Appellants' argument that our decision should be prospective is waived due to Appellants' failure to cite authority in support of this claim. Giant Food Stores, LLC v. THF Silver Spring Dev., L.P., 959 A.2d 438, 444 (Pa.Super. 2008). The claim is otherwise without merit. This Court has previously determined that an appellate court decision announcing a rule of law will apply to the case in which it is announced and to all pending cases. Davis ex rel. Davis v. Government Employees Ins. Co., 775 A.2d 871, 874-874 (Pa.Super.2001). "[P]urely prospective application [ ] is limited entirely to future cases, denying the benefit even to the parties in this case, in which the *413 principle was first announced." American Trucking Associations, Inc. v. McNulty, 528 Pa. 212, 596 A.2d 784, 789 (1991). The Pennsylvania Supreme Court has at times issued purely prospective decisions, albeit on rare occasions, determining that it would be inequitable to apply a change in the law even to benefit the party who successfully argued for the change. See id. Here, we are merely clarifying the incongruity between two rules, rather than instituting a complete change in the law. Because attorney work-product is not absolutely privileged, Appellants could reasonably anticipate discovery. Appellants' counsel undertook a risk in corresponding with Dr. Green. All of the law involved leads to this conclusion, and it is not inequitable to apply this decision to the parties involved herein.
Order affirmed.
NOTES
[1] Discovery orders involving privileged material are immediately appealable collateral orders. Pa.R.A.P. 313(a); T.M. v. Elwyn, Inc., 950 A.2d 1050, 1056 (Pa.Super.2008). Appellants filed a notice of appeal on October 28, 2009. On November 4, 2009, the trial court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants timely complied and the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 15, 2009.
[2] The Pennsylvania Association for Justice filed an amicus curiae brief in support of Appellants. The Pennsylvania Defense Institute filed one in support of Appellees.
[3] Initially, we note that the parties direct our attention to Federal Rule of Civil Procedure 26, the federal counterpart to the Pennsylvania Rules of Civil Procedure at issue. Federal Rule 26 has recently been amended to prohibit disclosure of drafts of expert reports and an expert's communications with counsel. The amendments to Federal Rule 26 do not become effective, however, until December 2010. Moreover, "Pennsylvania state court trials are not bound by federal court procedural rules." London v. City of Philadelphia, 412 Pa. 496, 194 A.2d 901, 902 (1963). Additionally, as the explanatory comment to Pa. R.C.P 4003.3 makes clear, Rule 4003.3 "differs materially from Fed.R.Civ.P. 26(b)(3)." Thus, we disavow any reliance upon Fed. R.C.P. 26.
[4] We reject Appellants' argument that a testifying expert is a party's representative. The clear language of Rule 4003.3 states a party's representative includes, "his or her attorney, consultant, surety, indemnitor, insurer, or agent." Pa.R.C.P. 4003.3. "Expert witness" is not included in this definition.
[5] The Rules of Civil Procedure distinguish between an expert who will testify at trial and an expert who serves as a consultant only and will not testify. As the explanatory comment to Pa.R.C.P. 4003.5 makes clear "[i]f the expert is not expected to be called at trial, the situation is quite different. The special procedures listed [in Rule 4003.5(a)(1)] will not be applicable." Thus, discovery may be sought regarding the testifying expert's opinions and facts known while discovery of the consulting expert's opinions and known facts is prohibited unless the consulting expert is a medical expert as defined in Rule 4010(b) or by order of court. Pa.R.C.P. 4003.5(a)(1) and (a)(3).